# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| ELIZABETH STEWART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-cv-00501-O-BP |
| | § | |
| JESUS NEVAREZ, JR., | § | |
| TARRANT COUNTY DISTRICT | § | |
| CLERK THOMAS A WILDER, and | § | |
| TEXAS ATTORNEY GENERAL | § | |
| KEN PAXTON, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Ken Paxton's Motion to Dismiss (ECF No. 15) and Brief/Memorandum in Support (ECF No. 16), filed August 29, 2017; Defendant Thomas A. Wilder's Motion to Dismiss (ECF No. 20) and Brief/Memorandum in Support (ECF No. 21), filed September 5, 2017; and Defendant Jesus Nevarez, Jr.'s Motion to Dismiss (ECF No. 25) and Brief/Memorandum in Support (ECF No. 26), filed September 19, 2017. United States District Judge Reed O'Connor referred this case to the undersigned for pretrial management by Order entered on August 17, 2017. ECF No. 12. After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant Ken Paxton's Motion to Dismiss (ECF No. 15), Defendant Thomas A. Wilder's Motion to Dismiss (ECF No. 20), and Defendant Jesus Nevarez, Jr.'s Motion to Dismiss (ECF No. 25); and **DISMISS** this action **WITH PREJUDICE** as to all defendants.

## BACKGROUND

Plaintiff Elizabeth Stewart ("Stewart") sued Defendants Jesus Nevarez, Jr. ("Nevarez"),

Thomas A. Wilder ("Wilder"), and Ken Paxton ("Paxton") (collectively, "the Defendants") for violations of due process under the Fifth and Fourteenth Amendments. ECF No. 1 at 1. She seeks damages resulting from an alleged deprivation of the opportunity to be heard on her attempt to modify her child custody and child support orders. *Id.*

Stewart is the mother of two children, H.S. III and A.S. *Id.* at 3. Harry Stewart II, who is not a party to this case, is the father of the children and Stewart's ex-husband. *Id.* On August 25, 2014, Stewart filed in Tarrant County District Court a Motion to Modify in Suit Affecting the Parent-Child Relationship and Request for Temporary Orders and for Temporary Restraining Order, for Protective Order and Motion to Transfer ("the Modification Suit"). *Id.* at 3; ECF No. 16 at 2. On September 26, 2014, Harry Stewart II filed a counterpetition to the Modification Suit. ECF No. 1 at 3. On January 16, 2015, Plaintiff Stewart filed her Counter-Respondent's Original Answer. *Id.*

The three Defendants are connected with the Modification Suit. Nevarez is judge of the 231st District Court, a family court in Tarrant County, Texas, who presided over the Modification Suit. *Id.* at 2, 5. Wilder is the District Clerk of Tarrant County, sued because he trains and manages the Tarrant County district court deputy clerks. *Id.* at 2. Paxton is the Attorney General of the State of Texas, sued because his office manages the Texas Child Support Division. *Id.* at 3.

Harry Stewart II requested a de novo hearing during the proceedings of the Modification Suit, which hearing was noticed for December 10, 2014 on the docket sheet. *Id.* at 4, Exhibit 1-5 at 27. Stewart alleges that the hearing instead took place on January 27, 2015, and that there is no record on the docket of the change of date. ECF No. 1 at 4. She additionally alleges that Nevarez, as presiding judge at the hearing, refused to allow her to present five witnesses and limited the scope of the evidence she could present about her ex-husband. *Id.* According to Stewart, Nevarez

2

ended the hearing prematurely and required the attorneys to meet with him in chambers. *Id.*

The 231st District Court entered a final order in the Modification Suit on July 1, 2015. *Id.* at 8, Exhibit 1-4 at 1. The order notes that the court tried the case on June 11, 2015, and Stewart did not appear at the trial. *Id.* Stewart maintains that she was never notified of the trial. *Id.* at 8. She also complains that there was no evidence to support the court's orders removing her parental rights and terminating Harry Stewart II's obligation to pay child support. *Id.* at 5–6. She requested a de novo hearing, which was held on June 17, 2015. ECF No. 28 at 3. The 231st District Court entered its final order in her case on July 1, 2015. ECF No. 1, Exhibit 4 at 32.

Stewart now has primary custody of the children, though Harry Stewart II had custody previously. *Id.* at 9, 11. The Attorney General's Office has sent her letters claiming she owes child support pursuant to the final order. *Id.* at 9. On February 28, 2016, Stewart filed a Request for Administrative Review with the Child Support Division of the Attorney General's Office. *Id.* According to Stewart, the Attorney General's Office held a Review Hearing in April 2016. *Id.*

On February 3, 2016, Harry Stewart II filed a Motion for Enforcement of Child Support. ECF No. 16 at 3, App'x A. On May 31, 2016, the family court summoned Stewart to a child support enforcement hearing. ECF No. 1 at 10. Stewart alleges that at this hearing the court could not find evidence of the earlier trial's occurrence or its determination of child support. *Id.* at 11.

Stewart did not appeal the final order in the Modification Suit to the state appellate court. *Id.*, Exhibit 2; ECF No. 16 at 11. Stewart currently has a mandamus action "for declaratory relief of the void order" pending in the Texas Supreme Court. ECF No. 1 at 11. She also has filed a complaint against Nevarez with the Texas Judicial Commission. *Id.* Stewart previously filed a § 2254 habeas claim in this Court, which was dismissed for lack of jurisdiction. *Stewart v. 231st Judicial Dist. Tex. AG*, Civil Action No. 4:16-CV-999-A, 2016 U.S. Dist. LEXIS 150338 (N.D.

Tex. 2016).

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of*

*Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co.*, 313 F.3d at 329; *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction"); *Parker v. Allstate Ins. Co.*, 3:16-CV-00892-CWR-FKB, 2017 WL 4287912, at *1 (S.D. Miss. Sept. 27, 2017) ("It is well-established that plaintiffs who fail to meet their burden on a motion for judgment on the pleadings and yet may still have a viable avenue to recover should be granted leave to amend their complaint and make their best case." (citation omitted)).

A *pro se* plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* However, if the court determines that plaintiff has pleaded his or her best case, a district court does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326–27 (5th Cir. 1999) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

**ANALYSIS**

Stewart asserts two claims for relief in her complaint, both under 42 U.S.C. § 1983 for violations of her civil rights. First, she claims that the Defendants deprived her of her constitutional right to a fair trial, as a result of the many alleged problems during her Modification Suit. ECF No.

1 at 11–13. Second, she sues for failure to train, claiming that those problems were the result of the Defendants' failures to train their staff in proper procedures. *Id.* at 14–17. She requests actual and punitive damages and any other relief to which she is entitled, including prospective injunctive relief. *Id.* at 17; ECF No. 28 at 6.

I.  **Stewart has sufficiently stated her fair-trial and failure-to-train claims.**

Defendants request dismissal under 12(b)(6) on the basis of Stewart insufficiently stating her § 1983 claims of fair trial and training violations. To prove up this argument, Defendants attach as contrary evidence court filings, dockets, and other records related to the state court proceedings and ask this Court to take judicial notice under Federal Rule of Civil Procedure 201. Certainly it is tempting in a case such as this, where much of the evidence that would be necessary to support Stewart's claims are matters of public record, to consider dismissing the case under 12(b)(6) based on what those records prove or fail to prove. Adding to that temptation is the breadth and the detail of Stewart's original complaint. However, factual and legal disputations are generally matters reserved for the summary judgment or trial stage. *See Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (noting that "disputed questions of fact are anathema to Rule 12(b)(6) jurisprudence").

In his Motion to Dismiss, Wilder conducts "a review of what actually occurred procedurally in the 231st modification proceedings and what actually led to the entry of the July 1, 2015 judgment [to] reveal that Stewart has mischaracterized the events and that the 231st staff/clerks committed no constitutional violations." ECF No. 20 at 19. During this review, Wilder notes facts missing from Stewart's complaint and cites court documents, some provided by Wilder, to disprove Stewart's allegations. *Id.* at 20–23. Wilder also argues in his reply that Stewart provides no court records to prove her assertion that a de novo hearing took place on January 27, 2015. ECF

No. 32 at 2. But at the 12(b)(6) stage courts do not consider what "actually occurred" or consider the credibility of opposing evidence. Instead they consider, taking the plaintiff's pleaded facts as true, whether she has stated a claim. Stewart need not present evidence in her pleadings, and Wilder cannot dispute pleaded facts in a motion to dismiss. He can only argue that Stewart failed to state a claim under § 1983 in her pleadings. Additionally, as Stewart's central allegation against Wilder is that he or his staff did not keep records or recorded items incorrectly, the request that those same, allegedly improper records be used to dismiss her claims would require the Court to make a credibility determination that is not allowed at this stage.

The Supreme Court has stated that the statutory language of § 1983 compels a broad construction of the statute, as it speaks of deprivations of "any rights, privileges, or immunities secured by the Constitution and laws." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991); *see also Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 683 (1978) (quoting the legislative history of § 1983 to demonstrate that the remedial function of the statue is to aid in the preservation of human liberty and human rights, and as such it should be "liberally and beneficently construed"). Allegations that a person did not receive a fair trial are actionable in at least some cases under § 1983. *See Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008)) (affirming the district's court's denial of qualified immunity for a lab technician who suppressed exculpatory evidence). Failure-to-train allegations are also actionable under § 1983, though the standard of fault is stringent. *Brown v. Bryan Cty., OK*, 219 F.3d 450, 459 (5th Cir. 2000); *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

Stewart has raised sufficient allegations that she suffered constitutional violations. At the 12(b)(6) stage, a court decides only whether the plaintiff has stated a complaint upon which relief

could be granted, not the likelihood that she will prevail. Her claims, construed liberally as she is *pro se*, state abuses that are generally actionable under § 1983. She has made factual allegations that she was denied access to the courts, that court proceedings did not follow correct procedures, and that state officials made errors in her case as a result of a lack of training. These factual allegations satisfy the standard set out in *Twombly* and *Iqbal*. Stewart has stated a claim upon which relief could otherwise be granted, or, at the very least, one that could in theory be sufficiently amended to satisfy 12(b)(6). Although she has adequately alleged violations under § 1983, her claims should be dismissed because she cannot overcome the *Rooker-Feldman* doctrine, abstention, and the various types of official immunity that apply to her suit.

**II.     Stewart's claims are inextricably intertwined with her state judgment and should be dismissed under the *Rooker-Feldman* doctrine.**

Stewart characterized her complaint as a civil rights suit under § 1983, but her pleadings and responses to the multiple motions to dismiss make clear that the aim of this suit is to appeal and overturn the child support order entered by the state court. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994). "When issues raised in a federal court are 'inextricably intertwined' with a state judgment and the court is 'in essence being called upon to review the state-court decision,' the court lacks subject matter jurisdiction to conduct such a review." *Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir. 1995) (quoting *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)). "The casting of a complaint in the form of a civil rights action cannot circumvent this rule." *Liedtke*, 18 F.3d at 317. Plaintiff's recourse in such cases is "with the state appellate courts and thereafter the United States Supreme Court on application for a writ of certiorari, not by a complaint to the federal district court." *Id.* at 318. The federalism interests underlying this doctrine particularly apply to domestic issues like child

custody and child support: "If the federal court must determine which parent should receive custody, what rights the noncustodial parent should have, how much child support should be paid and under what conditions, or whether a previous court's determination on these matters should be modified, then the court should dismiss the case." *Rykers v. Alford*, 832 F.2d 895, 900 (5th Cir. 1987).

The claims in this case are "inextricably intertwined" with the state family court's child custody and child support order in the Modification Suit. All of the factual allegations in Stewart's fair trial claim against Nevarez and Wilder, whether they concern lack of notice of hearings, an inability to present evidence at hearings, or communication problems with court staff, concern her Modification Suit. *See generally* ECF No. 1. Errors in state-court proceedings are to be brought before state appellate courts, whose precise function it is to consider such errors. *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986); *Chasez v. Powell*, 1:07CV929 LGJMR, 2008 WL 591941, at *2 (S.D. Miss. Feb. 28, 2008) (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415 (1923)). Stewart does not appear to have directly appealed her case to the state appellate court, though she asserts that the de novo hearing held on June 17, 2015—before the final order was entered on July 1, 2015—was an appeal. *See id.* at Exhibit 2; ECF Nos. 16 at 11 and 28 at 2–3. The *Rooker-Feldman* doctrine requires dismissal of claims brought in federal court that are more properly appealable in state courts. As this is the case with Stewart's fair-trial claims against Nevarez and Wilder, the undersigned recommends dismissal.

Stewart's fair-trial claim against Paxton does not directly concern errors in her state-court proceedings. Instead, her claim is that the Attorney General's Office did not "properly verify that the Court Order did not complete a legal judicial process and did not give them jurisdiction to establish enforcement." ECF No. 1 at 13. Stewart claims that because of the errors in her state-

9

court proceeding, Paxton should be enjoined from enforcing the order that resulted from that proceeding. *See* ECF No. 28 at 6. As this claim appears to attack the validity of a final state court order (final because it was not appealed), the *Rooker-Feldman* doctrine also bars this claim. A request to cease enforcing a child support order is of the sort that the *Rykers* court advised federal courts to dismiss.

Likewise, Stewart's failure-to-train claims are an attempt to appeal the outcome of her Modification Suit. She makes no failure-to-train claim against Nevarez. *See id.* at 13–14. Against Wilder, her complaints are in part identical to her fair-trial claim. *See id.* She complains primarily of improper maintenance of records and other administrative difficulties in pursuing her claim at the state court level. *Id.* at 14. These alleged errors are, as with her fair-trial complaints, matters for the state appellate courts, not the federal courts.

On her failure-to-train claim against Paxton and the Child Support Division, Stewart vaguely requests prospective injunctive relief, "to prohibit current and future unconstitutional acts." ECF No. 28 at 6. She only specifically requested injunctive relief in her response to Paxton's Motion to Dismiss, not in her original complaint. *Id.*; *see* ECF No. 1 at 17. The acts that she wishes enjoined are all of the actions Paxton has taken to enforce the child support order, the final order entered in the Modification Suit. *See* ECF Nos. 28 at 6 and 1 at 15–16 (complaining that the Child Support Division wrongly determined that Stewart owed child support and listing the steps the Division took to collect from her). Her sole reason for why the court should order an injunction is that her child support order was improper because of the problems she has alleged in the state family court proceedings, not because of any unconstitutional acts Paxton took in enforcing the order. *See* ECF No. 28 at 6; *see also Mosley v. Bowie County Texas*, 275 Fed. App'x. 327, 329 (5th Cir. 2008) (distinguishing between requests to void state child support judgments, barred by

10

*Rooker-Feldman*, and claims of constitutional violations in enforcement efforts, not barred). This failure-to-train claim is essentially another request to overturn the state court's decision, which under the *Rooker-Feldman* doctrine a federal court is unable to do. *See Liedtke*, 18 F.3d at 317–18; *see also Laskowski v. Attorney Gen. of Texas*, CIVA H-05-1428, 2006 WL 2479101, at *2 (S.D. Tex. Aug. 25, 2006) (rejecting jurisdiction in a claim for reduction of child support arrearages).

Neither her fair-trial claims nor her failure-to-train claims are claims over which a federal court can assert jurisdiction. They should be dismissed under the *Rooker-Feldman* doctrine.

### III. The Court should abstain from ruling on this lawsuit as Stewart has a pending mandamus before the Texas Supreme Court.

Even if this Court had jurisdiction over Stewart's lawsuit, it should abstain from ruling on the case under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). Under this doctrine, federal district courts are to refrain from entertaining demands for injunctive or declaratory relief premised upon constitutional challenges to state criminal or civil proceedings that are imminent or ongoing at the time the federal suit is initiated. *Id.* at 52–53 (concerning injunctive relief in criminal cases); *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (concerning declaratory relief); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (extending the abstention doctrine to cases seeking an injunction of state civil proceedings). *Middlesex County* set out a three-part test describing the circumstances under which a federal court is advised to abstain in state civil proceedings: (1) the dispute involves an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the state proceedings afford an adequate opportunity to raise constitutional challenges. *Wightman v. Texas Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996) (citing *Middlesex Cnty.*, 457 U.S. at 432). The *Middlesex County* test applies in this case: (1) Stewart has a mandamus action

concerning the subject of the Modification Suit pending before the Texas Supreme Court, (2) child custody and child support are important state interests; and (3) the mandamus action affords her an adequate opportunity to raise her claims. *See Paprock v. Brown*, A-15-CV-1073 LY, 2015 WL 12734166, at *2 (W.D. Tex. Dec. 7, 2015), *report and recommendation adopted in part*, A-15-CV-1073-LY, 2016 WL 6635745 (W.D. Tex. Mar. 14, 2016) (dismissing a similar case under *Younger* and *Middlesex County* as family and child custody issues are important state interests and Texas law provided the plaintiff with a sufficient avenue to present her claims). The undersigned therefore recommends that the Court refrain from providing any declaratory or injunctive relief in this case.

### IV. The Eleventh Amendment bars claims against the Defendants to the extent they are sued in their official capacities.

Under the Eleventh Amendment, states may not be sued in federal court unless they unequivocally consent to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984). This immunity extends to state agencies and, if the relief sought would operate against the state, to state officials. *Id.* at 101. But there is an exception to sovereign immunity for suits challenging the constitutionality of a state official's action in enforcing state law. *Ex Parte Young* 209 U.S. 123 (1908). *Young* allows only "prospective injunctive relief to prevent a continuing violation of federal law" and does not allow damages or other retrospective relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Stewart has raised the *Ex Parte Young* exception in her responses to the Motions to Dismiss. ECF Nos. 28 at 6 and 33 at 9. She claims prospective injunctive relief, though only against Paxton and not the other Defendants. ECF No. 28 at 6. For the most part, she asserts only conclusory allegations that Paxton's enforcement of an allegedly improper child support order is

unconstitutional. ECF No. 28 at 6. She does cite Title IV-D of the Social Security Act, but she does not "state specifically which provision of the Social Security Act was violated by the Attorney General or why [she] believes that [she] has a private right of action under the Social Security Act." *See Anderson v. Abbott*, 83 Fed. App'x. 594, 595 (5th Cir. 2003) (citing *Blessing v. Freestone*, 520 U.S. 329, 340–48 (1997)) (affirming dismissal upon a similar argument in a child support case). Such unspecific arguments and allegations do not make for a well-pleaded complaint against Paxton, under the standard set out in *Twombly* and *Iqbal*. The Eleventh Amendment thus shields all of the Defendants from liability to the extent that they are sued in their official capacities for damages, and the *Young* exception does not allow injunctive relief against Paxton.

V.  **Stewart has not met her burden of rebutting the Defendants' assertions of qualified immunity, as she has not alleged the violation of a constitutional right.**

The doctrine of qualified immunity protects government officials from suit and "from liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once an official asserts qualified immunity, the burden shifts to the plaintiff to rebut the defense. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When determining whether an official can claim qualified immunity, courts engage in a two-step analysis. *Id.* (citing *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016)). "First, they

assess whether a statutory or constitutional right would have been violated on the facts alleged." *Id*. "Second, they determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that '*every reasonable official would understand that what he is doing violates the law.*'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Defendants Nevarez and Paxton assert qualified immunity in this case, and Stewart does not meet her burden of rebutting their assertions. She does not specifically identify any clearly established statutory or constitutional right that the Defendants violated, so she is unable to satisfy either step of the qualified immunity analysis. Instead, Stewart speaks vaguely of "constitutional deprivation" and "judicial process" and "violation of federal law." ECF No. 28 at 5–6. When she does cite a statute, she often cites to entire chapters or parts, in which there do not appear to be any applicable provisions that Defendants violated, even taking all of Plaintiff's pleaded facts as true. *See* ECF Nos. 1 at 16 and 28 at 5–6. In general, Stewart's arguments are not specific enough to identify clearly demarcated violations of the law in order to overcome qualified immunity.

In particular, when arguing that Nevarez does not have qualified immunity from suit, Stewart makes only general allegations that he denied her access to the courts and denied her liberties. ECF No. 33 at 9. She names no existing precedent that Nevarez violated, let alone one that every reasonable official would have understood was a violation of the law, as *al-Kidd* requires. 563 U.S. at 741. She asserts that "once discovery is completed she will have ample facts

14

to support the framework in her complaint and the elements against defendant." *Id.* However, qualified immunity operates prior to discovery, as its purpose is exactly to prevent the subjection of government officials to the costs of discovery. *Mitchell*, 472 U.S. at 526. Stewart has not met her burden of rebutting Nevarez's immunity.

In her argument that Paxton does not have qualified immunity, Stewart cites Texas Family Code § 156.401 to claim that Paxton violated the law by enforcing a child support order based on a child support modification for which there was no trial notice or record of testimony. ECF No. 28 at 5. However, while this section is entitled "Grounds for Modification of Child Support," nothing else in the section appears to apply to Stewart's argument, and the words "notice," "trial," and "record" do not appear. *See* Tex. Fam. Code Ann. §156.401. There is nothing in the statute to suggest that enforcement by Paxton or the Child Support Division of an improperly entered child support order is a clear violation of the law. Even under the relaxed standard for *pro se* plaintiffs, such assertions do not suffice to rebut qualified immunity.

## VI. Judge Nevarez has absolute judicial immunity for every judicial action of which Stewart complains.

Judges have absolute immunity from civil actions for any judicial act over which they have jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Allegations of bad faith or malice do not overcome judicial immunity. *Id.* Immunity only does not apply regarding (1) nonjudicial actions, that is, "actions not taken in the judge's official capacity"; or (2) judicial actions "taken in the complete absence of all jurisdiction." *Id.* Courts are to construe jurisdiction broadly for purposes of judicial immunity. *Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir. 1985) (citing *Stump*, 435 U.S. at 356–57).

Stewart's allegations do not overcome Nevarez's judicial immunity. Even taking all of her claims as true, every accusation she makes against Judge Nevarez on her fair trial claims—including Nevarez ignoring requests for a protective order, not signing orders, leaving information out of orders, closing a case improperly, and not allowing her to present evidence—are judicial acts taken in Nevarez's official capacity as the presiding judge of the 231st District Court and over the Modification Suit. *See* ECF Nos. 1 at 4–6 and 33 at 2–4.

Nor can Stewart assert that Nevarez did not have jurisdiction over the Modification Suit. She attacks his jurisdiction on the ground that none of the parties to the Modification Suit lived in Tarrant County at the time she filed the suit and on the ground that she filed a motion to transfer, though she makes no claim that a transfer actually took place. ECF Nos. 1 at 3 and 33 at 3, 8–9. Texas family courts are courts of continuing, exclusive jurisdiction, and they only lose that jurisdiction under particular circumstances, such as transfer to another court. Tex. Fam. Code Ann. §§ 103.001–003, 155.001–004. Stewart brought the Modification Suit herself in Nevarez's court, and she has made no claim that another court later took jurisdiction. ECF No. 1 at 3, Exhibit 5 at 26. And even if another court had taken jurisdiction over the suit, under *Adams* and *Stump*, Nevarez still would have judicial immunity as his jurisdiction, broadly construed, is over family court matters and all of the complained-of actions were family court matters. As Nevarez took all these actions in his official capacity and within his jurisdiction, he has absolute judicial immunity from suit and from liability in this claim. All claims against him should therefore be dismissed.

Judicial immunity also extends somewhat to Wilder and his court staff. Court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction . . . ." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.

1981). To the extent that Stewart sues Wilder for actions of his staff done at Nevarez's direction, those claims must also be dismissed.

**VII.   As Stewart has no viable avenue of recovery on her claims, her complaint should be dismissed with prejudice.**

While the court should dismiss a complaint without prejudice in most cases, a plaintiff must have some "viable avenue to recover" according to which the plaintiff could amend the complaint. *See Parker*, 3:16-CV-00892-CWR-FKB, 2017 WL 4287912, at \*1. If this dismissal were only on the basis of how well-pleaded her constitutional claims were, Stewart could feasibly reassert those claims in an amended complaint. However, there are other barriers to Stewart's claims, particularly judicial, official, and qualified immunity as well as the *Rooker-Feldman* doctrine, that render her claims completely unviable. *See Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 642, 647–48 (N.D. Tex. 2007) (Lynn, C.J.) (accepting magistrate judge's recommendations and dismissing with prejudice claims that were similarly defective because of judicial, official, and qualified immunity). Stewart filed a lengthy, detailed complaint and has now responded extensively to three different dispositive motions in this case, yet she has raised no arguments or facts that suggest that she can overcome any of these barriers to recovery in her case. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (affirming dismissal with prejudice where plaintiff had pleaded his best case). Even if she amended her complaint, Stewart has no viable avenue to recover on her claims in this Court. Because amendment would be futile, her complaint should be dismissed with prejudice.

## CONCLUSION

After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant Ken Paxton's Motion to Dismiss (ECF No. 15), Defendant Thomas A. Wilder's Motion to Dismiss (ECF No. 20), and Defendant Jesus Nevarez,

17

Jr.'s Motion to Dismiss (ECF No. 25); and **DISMISS** this action **WITH PREJUDICE** as to all defendants.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed November 8, 2017.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE